ORDERED.

Dated: March 12, 2012



**Eileen W. Hollowell, Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re:                                                    )
                                                          )          Chapter 11
DESERT GARDENS IV, LLC,                                    )
                                                          )          Case No. 2:11-bk-31061-EWH
                                                          )
                                                          )          **MEMORANDUM DECISION**
                          Debtor.                          )
                                                          )
_____)

## I.  INTRODUCTION

Desert Gardens IV, LLC ("Debtor") seeks authorization, pursuant to 11 U.S.C. §§ 506(c) and 552(b)(1), for a surcharge in order to pay reasonable and necessary professional expenses incurred by Debtor using estate funds currently subject to a cash-collateral agreement.  For the reasons explained in the balance of this opinion, Debtor's request for surcharge will be denied.  In the alternative, Debtor seeks to use cash collateral to pay its professionals' fees.   That request is denied without prejudice.

## II.  FACTUAL AND PROCEDURAL HISTORY

Debtor filed a Chapter 11 voluntary petition on November 4, 2011.  Debtor owns and operates two adjacent, 532-unit residential apartment buildings along with operating a telecom-services provider for building residents, a furniture-rental business, a laundry concern, and an on-site café (the "Property").  US Bank ("Creditor") holds a first-priority

lien on substantially all of Debtor's assets, including real property, rents, and cash flow generated by the apartments and Debtor's additional business activities.

On November 28, 2011, the Court approved a Stipulated Interim Order re: Use of Cash Collateral. Among other terms, the agreement called for Debtor to make monthly adequate protection payments of $80,000 ("Adequate Protection Payments") and for Creditor to receive replacement liens to the same extent and priority as prepetition liens on Debtor's property. Creditor also memorialized an objection to the use of cash collateral for paying professional fees.[1] On February 6, 2012, the Court approved a Second Stipulated Interim Order Approving Debtor and US Bank's Second Stipulation re: Use of Cash Collateral that extended the terms of the original cash-collateral stipulation. Creditor continued to oppose a "carve out" which would allow Debtor to use cash collateral for compensating professionals.

Debtor's counsel filed its First Application for attorney's fees on December 5, 2011. Counsel sought $52,428.49. Debtor's counsel submitted a second fee application on January 20, 2012 seeking $35,460.09. Creditor filed a conditional objection, which did not dispute the amounts charged, but objected to being surcharged for the fees.

---

[1] "Notwithstanding that the Budget contains a line item for 'Legal/Accounting,' US Bank has not consented to the payment of any legal, accounting, or other professional fees or expenses from its Cash Collateral, and no approval for payment of any such fees or expenses has been approved from Cash Collateral, or otherwise, under this Order…This is without prejudice to Debtor's right to request payment of such fees or costs from Cash Collateral in the future, and without prejudice to US Bank's right to object to and be heard on any such request." Stip. Interim Order re Use of Cash Collateral at 6, ¶ A.

2

On January 18, 2012, Debtor filed a Motion to Authorize Surcharge ("the Surcharge Motion"). Debtor argues that a surcharge is warranted under 11 U.S.C. § 506(c) which provides for surcharging a secured creditor's collateral in order for a trustee or debtor-in-possession to recover the "reasonable, necessary costs and expenses of preserving" the collateral. According to the Debtor, 11 U.S.C. § 552(b)(1) limits Creditor's lien for this allegedly equitable purpose. The Surcharge Motion contends that Debtor has satisfied both the "subjective" and "objective" tests applied to surcharge inquiries.

Debtor claims to have passed the subjective test because while Creditor has allegedly "stonewalled" Debtor, it nonetheless has acquiesced to the reorganization effort, thereby implicitly waiving its surcharge objection. In support of these allegations, Debtor points to Creditor's refusal to negotiate a pre-filing workout, failure to pursue foreclosure, its affirmative decision to leave extant management in place, and its apparent willingness to allow Debtor to maintain and improve the estate. Debtor claims to have passed the objective test because its expenses have been reasonable and necessary for preserving, and arguably improving, the going concern that directly benefits Creditor.

Responding, Creditor filed an Objection to Motion ("the Objection") on February 6, 2012. Creditor argues that it was seeking to enforce its rights in state court at the time the Debtor filed its bankruptcy petition, and that a court-appointed receiver would cost less than half of what Debtor's management charges the estate each month. Despite its preference for state court remedies, Creditor claims to be working with

3

Debtor, citing as proof its cash collateral stipulations and delay in pursuing foreclosure so that Debtor can propose a plan of reorganization during the exclusivity period. Creditor also disputes the contention that it has or will reap a windfall while allowing Debtor to do all the work.

Creditor further argues that as an initial matter, surcharge is only appropriate when there is an allowed secured claim, and Debtor is challenging Creditor's standing. As a result, there may be no allowed secured claim to surcharge.[2] Beyond this issue, Creditor claims that Debtor has passed neither the subjective nor objective tests for surcharge. Creditor claims that it is ready to foreclose and has been impeded by the automatic stay, thereby undermining Debtor's assertion that Creditor has acquiesced to reorganization efforts. Creditor notes that Debtor bears the burden of demonstrating a quantifiable benefit that it has created for Creditor should Debtor seek a surcharge, and that Debtor has not satisfied this duty. Creditor also claims that 11 U.S.C. § 552(b)(2), not (b)(1), applies to rents, and that the scope of Creditor's lien has already been fixed postpetition by the cash collateral orders which were entered pursuant to stipulations with the Debtor.

Debtor filed a Reply ("the Reply") to the Objection on February 13, 2012. The Reply observes that Creditor's argument that Debtor should agree to foreclosure if it believes Creditor has acquiesced to reorganization is tantamount to Debtor's suggestion that Creditor forfeit its secured claim due to the lingering standing questions. Debtor then proceeds to cite various benefits Creditor has received through reorganization:

---

[2] For purposes of this decision only, the Court assumes Creditor is properly secured.

4

stability in occupancy at market-rate rents, limited administrative expenses, expert

management of a unique property (something a receiver allegedly could not provide).

Debtor also contends that Creditor is oversecured, as the Creditor's claim value

($26,342,273) is exceeded by the Debtor's appraised value of the Property

($27,450,000).

The Reply also cites Ninth Circuit authority, not cited in the Surcharge Motion,

that holds that payment of professional fees from cash collateral is permitted under

11 U.S.C. § 363 without regard to the requirements of § 506(c).[3]

### III. ISSUES

1.      May the Creditor's collateral be surcharged?

2.      May professional fees be paid from cash collateral?

### IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (M).

### V. DISCUSSION

A.      Surcharge

Bankruptcy Code section 506(c) allows a trustee to "recover from property

securing an allowed secured claim the reasonable, necessary costs and expenses of

preserving, or disposing of, such property to the extent of any benefit to the holder of

such claim…." Section 506 is applicable in this case pursuant to 11 U.S.C. § 1107, a

provision which vests a debtor-in-possession with all of the rights and duties of a

---

[3] Normally, a court should not consider an argument raised for the first time in a reply brief, Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007), but in this instance, Creditor was afforded additional time to address Debtor's argument and declined.

5

trustee. The party seeking the surcharge bears the burden of demonstrating that it is

permitted.

Ninth Circuit law regarding the application of § 506(c) was articulated in <u>Compton</u>

<u>Impressions, Ltd. v. Queen City Bank (In re Compton Impressions, Ltd.)</u>, 217 F.3d 1256

(9th Cir. 2000) and <u>Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie</u>

<u>Reynolds Hotel & Casino, Inc.)</u>, 255 F.3d 1061 (9th Cir. 2001). Courts "'allow payment

of administrative expenses from the proceeds of secured collateral when incurred

primarily for the benefit of the secured creditor or when the secured creditor caused or

consented to the expense.'" <u>In re Compton Impressions</u>, 217 F.3d at 1260 (quoting <u>In re</u>

<u>Cascade Hydraulics & Utility Serv., Inc.</u>, 815 F.2d 546, 548 (9th Cir. 1987)). Therefore,

a party seeking a surcharge must demonstrate that the expenses "it seeks to

surcharge…were reasonable, necessary, and beneficial to the secured creditor." <u>In re</u>

<u>Compton Impressions</u>, 217 F.3d at 1260. This is a difficult burden to satisfy, and the

amount of any surcharge is limited to the amount of benefit that can be proven with

specificity. <u>In re Debbie Reynolds</u>, 255 F.3d at 1068.

To measure necessity and reasonableness of an incurred expense, the Court

weighs the expense and benefit obtained for the secured creditor against the amount

that the secured creditor would have unavoidably faced through foreclosure and

property disposal. <u>In re Compton Impressions</u>, 217 F.3d at 1260; <u>see also</u> <u>In re</u>

<u>Chicago Lutheran Hosp. Ass'n.</u>, 89 B.R. 719, 727 (Bankr. N.D. Ill. 1988) ("Whether the

costs sought under 11 U.S.C. § 506(c) are reasonable is often *determined by a*

*comparison of the costs…*") (emphasis added). "The threshold inquiry is whether the

6

services for which a surcharge is sought were necessary to the secured creditor…." In re Compton Impressions, 217 F.3d at 1260.

Debtor has fallen short of satisfying the Ninth Circuit's standards for a surcharge under § 506(c). The Debtor filed for bankruptcy protection in the midst of Creditor actions in state court to enforce its rights. Creditor has subsequently consented to cash-collateral stipulations and afforded Debtor an opportunity to propose a plan of reorganization, however, Creditor has repeatedly objected to the use of cash collateral for professional compensation.

Debtor has not made the showing required by Ninth Circuit law. Creditor has not "caused or consented to" the expense for which Debtor seeks a surcharge; instead Creditor has explicitly withheld its consent. While providing the Adequate Protection Payments and maintaining the Property benefits Creditor, Debtor has not sufficiently demonstrated that the value it is providing exceeds the amount that the Creditor would have spent through foreclosure. Debtor bears this "onerous burden of proof" when seeking a surcharge. In re Debbie Reynolds, 255 F.3d at 1068.

The cases cited by the Debtor are distinguishable. Debtor relies on In re Croton River Club, Inc., 162 B.R. 656, 660 (Bankr. S.D.N.Y. 1993), but in that case, the court awarded "the legal expenses associated with [a cash collateral] order," Id., while considering a range of work related to litigation necessary to market estate property. That decision did not create a blanket carve out. Debtor also cites In re Compton Impressions, but the professional fees awarded in that case stemmed from work done to sell off assets, a discrete task.

7

1

B.     Payment of Professional Fees from Cash Collateral

2

Debtor's best argument was presented in the Reply, and this Court finds it

3

compelling.  In Sec. Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC),

4

314 B.R. 436 (BAP 9th Cir. 2004), the BAP was confronted with the question of whether

5

6

cash collateral may be used pursuant to § 363 without considering whether surcharge

7

requirements of § 506(c) have been met.  In that case, as in this case, a Chapter 11

8

debtor-in-possession sought to use cash collateral to compensate estate professionals

9

over the objection of a secured creditor whose lien extended to postpetition monthly

10

revenues.  In that case, as in this case, adequate protection payments were being made

11

pursuant to an agreed cash collateral order.  In that case, unlike this case, the debtor

12

was required to repay the cash collateral by a date certain and to spend it within certain

13

14

guidelines.

15

11 U.S.C. § 363(c)(2)(B) provides that a "trustee may not use, sell, or lease cash

16

collateral" without notice, a hearing, and court authorization.  11 U.S.C. § 363(e)

17

protects secured creditors by instructing that upon request from a party in interest, the

18

court shall "prohibit or condition" the use of estate property "as is necessary to provide

19

20

adequate protection." The BAP harmonized these portions of § 363 with § 506(c) by

21

explaining that protections afforded secured creditors are "not absolute," and that

22

adequate protection is contemplated as a means of protecting lien value while

23

accommodating the needs of debtors and creditors.  In re ProAlert, 314 B.R. at 441-2.

24

"Analytically, if the creditor's interest is adequately protected, then, by definition, there is

25

26

no surcharge and section 506(c) does not come into play." Id. at 439.  The decision

27

28

8

continued that "the key consideration in deciding whether to allow the use of cash collateral is whether the secured creditor's interest is adequately protected." Id. at 444. Finding that the secured creditor was adequately protected, the ProAlert decision affirmed the order allowing the use of cash collateral to pay professionals pursuant to § 363. A major difference in this case from ProAlert is that the parties in that case agreed that the creditor was under-secured and the requirement that the cash collateral used by the debtor be repaid by a date certain. Here, based on Debtor's assertion that Creditor is oversecured, Debtor apparently seeks to use the cash collateral without restriction. But, there has been no court determination of the value of the Property. Approval of Debtor's motion, therefore, would be a *de facto* determination of value without an evidentiary hearing or the consent of the Creditor. Such a result is improper.

## VI.  CONCLUSION

Debtor has failed to satisfy the requirements for surcharge pursuant to 11 U.S.C. § 506(c). However, in light of the holding in In re ProAlert, Debtor may still demonstrate that it is permitted to pay its estate professionals from cash collateral. However, the record is inadequate to permit such authorization at this time. Debtor must either await a determination of value of the Property or propose some other arrangement to adequately protect Creditor.

For the foregoing reasons, Debtor's Motion to Authorize Surcharge will be denied. The Debtor's request to use cash collateral for professional compensation pursuant to § 363 is denied with leave for the Debtor to amend its request. An order consistent with these rulings will be entered this date.

9

1    Dated and signed above.

2

3  Notice to be sent through the
   Bankruptcy Noticing Center "BNC"
4  to the following:

5  Bradley Jay Stevens
   Jennings, Strouss & Salmon, P.L.C.
6  One East Washington St. #1900
7  Phoenix, AZ 85004-2554

8  Louis Edward Humphrey
   DeConcini McDonald Yetwin & Lacy, P.C.
9  6909 East Main Street
10 Scottsdale, AZ 85251

11 Richard M. Lorenzen
   Perkins Coie LLP
12 2901 North Central Ave. # 2000
13 Phoenix, AZ 85012-2788

14 Christopher J. Pattock
   Office of the U.S. Trustee
15 230 North First Ave. #204
   Phoenix, AZ 85003-1706
16

17

18

19

20

21

22

23

24

25

26

27

28                              10